## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

SUPERMARKET ENERGY
SOLUTIONS, INC., and
CORNERSTONE PRODUCTS INTL.,
LLC,

               Plaintiffs,

v.

KASON INDUSTRIES, INC.,

               Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs Supermarket Energy Solutions, Inc. and Cornerstone Products Intl., LLC (collectively, "Plaintiffs") bring this action against Defendant Kason Industries, Inc. ("Defendant" or "Kason") and state as follows:

## NATURE OF ACTION

1.    This case concerns Kason's aggressive efforts to enforce alleged trademark rights in a purely functional product configuration that does not serve as an indicator of source. Kason has engaged in "trademark bullying," using purported trademark rights to harass and intimidate entities in an effort to monopolize the generic and functional configuration of a hydraulic door closer.

2.    Kason's unlawful threats and conduct have been directed toward Plaintiffs, both of whom are located in this Judicial District, and seek to interfere with and harm Plaintiffs' contractual relationships with each other and with others. The unreasonable and

baseless demands of Kason are and were intended to disrupt Plaintiffs' lawful business in this District, thereby requiring an adjudication of the rights of the parties in the dispute identified herein, before Plaintiffs suffer further damage.

3.      As set forth in more detail below, Kason's configuration for a door closer is not capable of serving as a trademark, as such a configuration is not an indicator of source for Kason's door closers—and in fact, such configuration has been and is currently used by numerous third parties.

4.      Moreover, Kason does not have the exclusive right to use the trade dress combination of a rectangular housing and a curved arm in connection with door closers. In addition, there can be no likelihood of confusion between Kason's use of such non-source identifying elements in connection with a door closer and Plaintiffs' alleged use of the same—indeed, because there has been none.

5.      Kason also unlawfully obtained federal trademark registrations for its functional trademark registrations by withholding relevant information and making false statements to the United States Patent and Trademark Office during prosecution of the applications for such registrations.

6.      Plaintiffs seek a Declaratory Judgment that any alleged trademark and trade dress rights asserted by Kason are invalid and unenforceable.

7.      Plaintiffs also seek a Declaratory Judgment that Plaintiffs' past, current and new door closers do not violate any alleged trademark and trade dress rights asserted by Defendant Kason, create a likelihood of consumer confusion, constitute unfair competition or constitute actionable dilution of any claimed trademark or claimed trade dress of Kason.

2

8.     Accordingly, this is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and trademark laws of the United States, specifically the Lanham Act, 15 U.S.C. §1051 et seq., seeking (a) cancellation of one or more registered trademark(s); (b) a declaratory judgment of noninfringement under the Lanham Act, 15 U.S.C. § 1114; (c) a declaratory judgment of no false designation under the Lanham Act, 15 U.S.C. § 1125(a); (d) a declaratory judgment of no trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c); and (e) a declaratory judgment of no infringement of alleged common law trademark rights.

## **PARTIES**

9.     Plaintiff Supermarket Energy Solutions, Inc., which also operates under the name Greenwize Energy Solutions ("GreenWize"), is a corporation organized under the laws of the State of Minnesota, with its principal place of business located at 2097 Barton Ave. NW, Buffalo, MN 55313.

10.     Plaintiff Cornerstone Products International, LLC ("Cornerstone") is an entity organized under the laws of the State of Minnesota, with its principal place of business located at 13570 Grove Dr. N. PMB 260, Maple Grove, MN 55311.

11.     On information and belief, Kason is a corporation organized under the laws of the State of Georgia, with its principal place of business at 57 Amlajack Boulevard, Newnan, Georgia 30265. Kason can be served through its registered agent, Lindsey & Lacy, PC at 200 Westpark Drive, Suite 280, Peachtree City, GA 30269.

## JURISDICTION

12.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and (b), and 28 U.S.C. §§ 2201 and 2202.

13.    This Court has personal jurisdiction over Kason because Kason conducts business in this District because Kason has advertised, marketed, and sold its products to consumers in Minnesota. Kason has purposefully directed these activities to customers and consumers in Minnesota directly and indirectly, by way of original equipment manufacturers ("OEMs") and replacement hardware distributors and through its website www.kasonind.com, where it markets its products specifically to residents of Minnesota. *See, e.g.*, https://www.kasonind.com/index.php/contact/mid_america (last accessed on January 13, 2026). On information and belief, Kason has for many years continuously and systematically conducted business, including selling, offering for sale, advertising, marketing and shipping its products, to residents in Minnesota and this District, and also to customers (including OEMs and replacement hardware distributors) knowing that such customers incorporate and/or sell Kason hardware in Minnesota and this District, and/or sell and/or ship Kason hardware to residents located in Minnesota and this District. For example, attached hereto as **Exhibit A** is a true and correct copy of a sales order dated March 20, 2024 from Horizon Equipment (a company located in Eagan, Minnesota) to Richfield Public Schools (located in Richfield, Minnesota) for a walk-in freezer incorporating Kason hardware.

14.    Kason further is subject to the personal jurisdiction of this Court because its false assertions of trademark infringement were directed to Plaintiffs in the State of Minnesota, and specifically in this District.

15.    Venue is proper in this Judicial District under 28 U.S.C. § 1391 because Kason is subject to personal jurisdiction within this District, and a substantial part of the events giving rise to the claims occurred within this District.

## BACKGROUND AND FACTS

### I.    GreenWize's Energy Efficient Products and Relationship with Cornerstone.

16.    GreenWize is a private company based in Buffalo, Minnesota that was formed in or about 2008. Greenwize is a producer of energy efficient technologies for a variety of industries.

17.    GreenWize manufactures and sells energy efficient replacement technologies for many products, including commercial refrigeration systems, such as motors, controls, anti-sweat heater controls, LED lighting, strips curtains, fan blades, motor mounts, door gaskets, door closers, and more.

18.    GreenWize specializes in providing contractors and installers with energy efficiency upgrades to provide to their end customers. Through such energy efficient upgrades, end customers are able to collect rebates through utility companies.

19.    GreenWize sells its products directly to some end customers as well as to third-party intermediaries, including dealers and distributors, located in the United States, Mexico, and Canada.

20.     GreenWize also works in conjunction with a network of third-party intermediaries, including distributors, dealers, and in-field representatives to sell its products to end customers.

21.     In the sale of its parts/products, GreenWize prominently and visibly displaying its mark – "GreenWize" – on its products, thereby identifying GreenWize as the source of its products through such marking.

22.     On or about February 17, 2012, GreenWize sought to register its GreenWize mark as a word mark. **Exhibit B**. The USPTO issued a registration for the word mark "GreenWize" on or about January 8, 2013, Registration No. 4,270,996 (the "'996 Mark"). The '996 Mark for "GreenWize" was registered under Class 009 for "energy efficient products, namely, electric controllers for heating, lighting and energy management; electric control devices for anti-sweat heaters; electronic servo motor controllers." *Id.*

23.     Relevant to this lawsuit, GreenWize sells pneumatic door closers for commercial refrigerators, an example is shown below:



GreenWize's pneumatic door closer (hereinafter "the GreenWize Branded Door Closer") prominently features GreenWize's registered Greenwize trademark.

24.    GreenWize works with Cornerstone to source its products via submitting a purchase order to Cornerstone in order to fulfill the order of a third-party customer or distributor of GreenWize.

25.    Cornerstone has specialized in the importation of certain products into the United States since 1997. In particular, Cornerstone assists in the importation of products, components, and assemblies from China to North America.

26.    Relevant to this lawsuit, Cornerstone imported and sourced the GreenWize Branded Door Closer for GreenWize.

**II.    Kason's At-Issue Hydraulic Door Closers.**

27.    On information and belief, Kason is in the business of selling refrigeration and restaurant equipment hardware, among other products.

28.     On information and belief, Kason sells its equipment and parts to two types of customers: original equipment manufacturers ("OEMs") and replacement hardware distribution customers.

29.     On information and belief, Kason's OEMs purchase hardware from Kason directly and then incorporate such purchased hardware, such as a door latch or door hinge, into the final products that the OEM then manufactures. Such products include commercial refrigerators and other restaurant equipment purchased by OEMs and the included in final products sold to end customers.

30.     On information and belief, Kason's replacement hardware distributors, purchase hardware directly from Kason and thereafter sell such Kason hardware, like individual door latches and door hinges, to end-customers, such as restaurants, or to repair companies. For example, such end-customers for replacement hardware distributors need to replace certain hardware that Kason supplies.

31.     One of Kason's products is a hydraulic door closer, which it identifies as the "1094 Hydraulic Door Closer." Kason alleges that the 1094 Hydraulic Door Closer embodies the at-issue functional trademarks.

32.     Kason's 1094 Hydraulic Door Closer include the word mark of "Kason," which is displayed on the side of the product. This is seen on products purchased from Kason and through for-sale products on their website.[1]

---

[1] https://www.kasonind.com/index.php/products/door_closers/1094_sureclose__hydraulic_door_closer (last accessed on Jan. 13, 2026).



A true and correct copy of the above depiction of Kason's products from its website is attached hereto as **Exhibit C**.

### III.   Kason's Failed Trademark Application for the Subject Hydraulic Door Closer.

33.   On or about June 20, 1995, Kason filed U.S. Trademark Application No. 74/691,008 (the "'008 Application") for "metal door closers." The application described the mark as "consist[ing] of the external appearance of a housing and a roller arm of a door closer which is attached to a door. The environment of the mark, including a strike for attachment to a door frame and a roller for cooperating with the strike, is shown in broken lines." The drawing of the application is shown below:



34.    A true and correct copy of the Trademark Trial and Appeal Board (the "TTAB") decision rejecting the '008 Application is attached hereto as **Exhibit D**.

35.    The '008 Application was denied by the Examining Attorney as being *de jure* functional, meaning that the design of the product enhances the function of the product. Ex. D at 2.

36.    Kason appealed to the TTAB regarding the functionality refusal of its registration. *Id.* at 3.

37.    On August 16, 1999, the TTAB affirmed the Examining Attorney's finding of *de jure* functionality of the '008 Application, finding that the rectangular shape of the housing was functional and further that Kason promoted the utilitarian functions of the rectangular housing, including that it "completely encloses [the] hydraulic mechanism" and "save[s] the extra expense and assembly time needed for separate housing cover." *Id.* at 6.

38.    The TTAB also agreed with the Examining Attorney that competitor door closer designs, such as Standard-Keil Industries Inc. and Dent Manufacturing Inc., were essentially the same as Kason's applied-for mark—a rectangular shaped housing with a

roller arm. *Id.* at 7. Representations of such competitor door closer designs are reproduced below.

39.     Finally, the TTAB found that for the applied-for trade dress mark, the "rectangular shape" was a distinctive feature of the mark in that it was "one of a very few superior designs for its functional purpose" so competitors of Kason frequently used such design for its functional purpose. *Id.*

40.     After the TTAB decision denying the application based on the functionality of the applied-for mark, Kason abandoned its application for registration of the applied-for mark. Since then, Kason has tried different avenues with the USPTO to achieve trade dress registrations.

### IV.    Kason's Trademark Registrations for Hydraulic Door Closers Should Not be Registered; They are Merely Functional and Generic.

41.     Following the 1999 TTAB decision, Kason subsequently applied for registration of nearly-identical marks that the TTAB previously refused as being functional.[2]

#### A.    Kason's First Mark for a Hydraulic Door Closer – the '100 Registration – is Functional and Generic.

42.     On or about November 9, 2005, Kason filed U.S. Trademark Application No. 76/650,047 (the "'047 Application") for the below trade dress covering "food service equipment, namely door closers":

---

[2] Kason did not file trademark applications for the at-issue design immediately. Instead, it relied on design patents for the relevant trade dress marks.



43.    A true and correct copy of the prosecution history of the '047 Application is attached as **Exhibit E**.

44.    On or about May 18, 2006, the USPTO Examining Attorney refused registration of Kason's proposed trade dress as "compris[ing] a configuration of goods that is not inherently distinctive and would not be perceived as a mark" and as lacking acquired distinctiveness. Ex. E at 9-10.

45.    In response to the Refusal, on or about August 31, 2006, Kason amended the description of goods for its applied-for mark to "hydraulic and/or pneumatic door closers for food service use in International Class 7." *Id.* at 13. The Examining Attorney further amended the description of goods to only "[h]ydraulic door closers for food service use" on or about September 26, 2006. *Id.* at 29.

46.    Through its attorney, Kason also swore under oath that the mark had become distinctive through its "substantially exclusive and continuous use in commerce for at least the [previous] five years." *Id.* at 27.

47.     This sworn statement was not true and, upon information and belief, Kason knew it was not true at the time it was made.

48.     Following the narrowing of the description of goods to *hydraulic* door closers for food service use and Kason's sworn representation regarding substantially exclusive use, the USPTO granted to Kason U.S. Trademark Registration No. 3,212,100 on February 27, 2007, covering Class 7 goods for "Hydraulic door closers for food service use" (the "'100 Registration"). *Id.* at 35.

49.     A true and correct copy of the '100 Registration is attached hereto as **Exhibit F** and depicted below:



50.     The '100 Registration merely depicts the curved arm and the rectangular housing of the door closer. These features are functional as evidenced by the TTAB's 1999 decision in the '008 Application. *See* Ex. D at 8.

51.     During prosecution of the '100 Registration, Kason never informed the USPTO that an Examining Attorney had previously refused registration of substantially

the same mark (the '800 Application) on the basis of functionality and the TTAB agreed and refused such registration.

52.     During prosecution of the '100 Registration, Kason never informed the USPTO that an Examining Attorney had previously identified competitor door closer designs that were essentially the same as the applied-for mark, and that the TTAB had agreed in refusing registration that these competitor designs had essentially the same appearance.

53.     Because all aspects of the '100 Registration are functional, the '100 Registration should not have been issued.

54.     Because all aspects of the '100 Registration are generic and do not serve as an indicator of source, the '100 Registration should not have been issued.

**B.     Kason's Second Mark for a Rectangular Door Closer Housing—the `887 Registration—is Functional and Generic.**

55.     On or about September 11, 2017, Kason filed U.S. Trademark Application 87/603,068 (the "'068 Application").  A true and correct copy of the prosecution history of the '068 Application is attached as **Exhibit G**.

56.    Kason's initial application sought registration of the below trade dress mark:



Kason's initial application for such mark sought registration of "a three-dimensional configuration of a base with an arm extending from the base having a rectangular front plate and two curved arms with a round roller mounted to the top ends of the arms." Exhibit G at 4.

57.    The Examining Attorney refused registration of the proposed mark based on several grounds. *Id.* at 13. First, registration was refused under Section 2(e)(5) because the applied-for mark was functional. *Id.* at 13-14.

58.    Additionally, the Examining Attorney found Kason's specimen of record for the applied-for mark highlighted the utilitarian purposes and functionality of the applied for mark. For example, Kason's advertised its hydraulic door closers as follows: "Powerful gas-loaded hydraulic cylinder guarantees controlled closure. Patented solid steel enclosed housing and bend-resistant hook assure long wear in heavy use. Extra wide hook ensures roller pick-up and overcome alignment problems." *Id.* at 14.

59.     The Examining Attorney also rejected the applied-for mark as functional because there were multiple third-party competitors using a similar trade dress for door closers. *Id.* Additionally, the identified competitors promoted its door closers as being functional, "extol[ing] specific utilitarian advantages of the applied-for product design or product." *Id.*

60.     With respect to the identified competitors, the Examining Attorney cited their websites, describing them as "third-party websites selling goods with a similar product configuration evidencing that the mark has a utilitarian purpose":

http://www.partstown.com/norlake/nor125373

http://www.partstown.com/amerikooler/amk11095000013

http://www.partstown.com/american_panel/ampl9c1310

http://www.partstown.com/norlake/nor000661

http://www.partstown.com/thermo-kool/thrm424700

*Id.*

61.     The Examining Attorney also refused registration of the applied-for mark because it consists of a nondistinctive product design or nondistinctive features of a product design, which is not registrable on the Principal Register without sufficient proof of acquired distinctiveness. *Id.* at 14-15.

62.     In response to the Office Action, on or about June 7, 2018, Kason submitted a response, arguing that the proposed mark was not functional because the '100 Mark had been granted, and the proposed mark was "the same design [as the '100 Mark] minus the mounting flanges." *Id.* at 43.

16

63.     Eleven days later, the Examining Attorney again refused registration, maintaining refusal based on the applied-for mark's functionality and lack of distinctiveness. *Id.* at 74-75. The USPTO found Kason's arguments unpersuasive, requiring Kason to dot out[3] functional features of the applied-for mark. *Id.* at 75. In particular, the Examining Attorney found the "applicant's advertisement submitted with the response touts the utilitarian advantage of the 'extra wide hook' and that the tabs on the side are used for mounting the goods." *Id.*

64.     In response to the Office Action, Kason submitted a response on or about December 18, 2018. *Id.* at 79. In its response, Kason amended its drawing and amended its description of the mark to as follows:

> The mark consists of a three-dimensional configuration of a rectangular base with a curved arm extending from the base having a rectangular front plate and two curved arms with a round roller mounted to the top ends of the arms, the mark also includes two oppositely extending top flanges and one downwardly extending bottom flange, wherein the flanges include screw mounting holes. The mark does not include the rivets. The portion of the drawing in dotted lines merely shows placement and is not claimed as part of the mark.

---

[3] Representing elements in dotted lines show that those elements are not claimed as part of the mark. TMEP § 1202.02(c)(i)(A) (8th ed. May 2025) ("[T]o show that they are not part of the mark, functional elements must be depicted in broken or dotted lines on the drawing to show the position or placement of the claimed portion of the mark.").



*Id.* at 80-83.

65.     Next, Kason argued that the applied-for mark for a hydraulic door closer was
not functional as the design of the door closer "is not essential to the use or purpose of the
door closer":

> The rectangular housing is not required to be rectangular. The dimensions of
> the housing are not required. The curved corners of the housing are not
> required to be curved. The curvature of the arms is not required to be curved.
> For this reason application respectfully submits that the rejection of the
> subject matter should be withdrawn.

*Id.* at 84.

66.     Kason also argued that the applied-for mark had acquired distinctiveness
through submission of affidavits and a declaration. *Id.* at 87, 90-100.

67.     Again, finding Kason's arguments unconvincing, the Examining Attorney
refused registration of the applied-for mark with a final action on or about January 15,
2019. *Id.* at 109. The Examining Attorney maintained its refusal of registration based on
functionality, finding the following elements essential to the use and purpose of the
hydraulic door closer in holding a door closed: "the arcuate arm including the cylindrical

roller and brads attaching the roller to the arm that extends from the rectangular housing, as well as the three flanges with holes used to mount the door closer." *Id.*

68.     On or about February 20, 2019, Kason amended the applied-for mark further, excluding the curved arm and the mounting flanges in its drawing. Kason also amended the description of the mark as follows:

> The mark consists of a three-dimensional configuration of a rectangular base of a metal door closer. The portion of the drawing in broken lines depicting the rivets, roller, screw, curved arm extending from the base having a rectangular front plate and two curved arms, and the three mounting flanges shows placement and is not claimed as part of the mark.

*Id.* at 128.

69.     Despite the functional elements of the applied-for mark, the USPTO granted U.S. Trademark Registration No. 5,809,887 to Kason on July 23, 2019, covering goods in Class 6 for "Door closers of metal, non-electric" (the "'887 Registration").

70.     A true and correct copy of the '887 Registration is attached as **Exhibit H**, and the drawing of the '887 Registration is shown below:



71.     The '887 Mark provides that it covers the following:

19

The mark consists of a three-dimensional configuration of a rectangular base of a metal door closer. The portion of the drawing in broken lines depicting the rivets, roller, screw, curved arm extending from the base having a rectangular front plate and two curved arms, and the three mounting flanges shows placement and is not claimed as part of the mark.

Ex. H.

72.     The '887 Registration depicts merely a rectangular housing shape of a hydraulic door closer, which was the same housing shape found to be de jure functional by the TTAB in 1999 in connection with the '008 Application covering a hydraulic door closer. *See, e.g.*, Ex. D at 8.

73.     During prosecution of the '887 Registration, Kason did not inform the USPTO that the TTAB had previously refused registration of the '008 Application on the basis of functionality.

74.     During prosecution of the '887 Registration, Kason did not inform the USPTO that, in refusing registration of the '008 Application, the TTAB specifically found that the rectangular shape of the door closer housing is functional as shown by Kason's advertisement of the functional benefits of the rectangular housing. *Id.* at 6-7.

75.     During prosecution of the '887 Registration, Kason did not inform the USPTO that, in refusing registration of the '008 Application, the TTAB specifically found that competitive door closers on the market showed essentially the same rectangular housing. *Id.* at 7.

76.     Because all aspects of the '887 Registration are functional, the '887 Registration should not have been issued by the USPTO.

77.    Because all aspects of the '887 Registration are generic and do not serve as an indicator of source, the '887 Registration should not have been granted.

**V.    Third-Party Use of Similar Door Closers with Rectangular Housing and Curved Arm Combination Shows Genericness and Lack of Policing of the Kason Marks**

78.    The absence of Kason's exclusive rights in the combination of design elements is further illustrated by the fact that over the years numerous other third parties also have used the combination of a rectangular housing and curved arm for door closers.

79.    Similar to Kason's hydraulic door closer subject to the at-issue marks, many hydraulic door closers for refrigeration systems use a rectangular body for its functionality. Examples of third-parties employing such rectangular body trade dress in connection with hydraulic door closers for refrigeration systems are shown below:

a.    WSZ[4]



---

[4]    https://www.walmart.com/ip/Door-Closer-Kit-Hydraulic-Stainless-Steel-Door-Closer-Freezer-Door-Closer-Kit-For-Cooler-Freezer-Doors-For-Flush-

b.  Generic[5]



---

Doors/17264822836?wmlspartner=wlpa&selectedSellerId=102773595 (last accessed on Jan. 13, 2026).

[5] https://www.amazon.com/Hydraulic-Warehouses-Self-Aligning-Quiet-Seal-Commercial-Grade/dp/B0FLJ6Y863/ref=sr_1_7?crid=3V1IWM8BIUID&dib=eyJ2IjoiMSJ9.4azSpfvUvwKo58spLjv03AGCpqia8MDWImmkEE0SAV-cc8pTdGIUOqwHlmeI4DKsrImD6UQdi7MU5DkdLUk4WjKjCWHRaSWcvpqAqvNm4tOszgksYcXGbIzfRcL4S7p_3Rey5DK792X0072PLZ-gf3mOGbQIpMAWwYM-Q1gFhmROrRNfVd7JlRsDjRaT4r8nrqcotPt6aMOZqTLncDuVX3gC7mkc5kP4MMfOgmLGaJF4AST6pARELXOd6uedbmj6VnTJ2nlEUlMRcJPrYITuJOFK7B2ezhhthtoe53fb_ug.Zyiv3rVvxUhiezyPg5MkhV1Ts09ffc5QAs6AblfIIeQ&dib_tag=se&keywords=hydraulic%2Bdoor%2Bcloser%2Bstainless%2Bsteel&qid=1758133963&sprefix=hydraulic%2Bdoor%2Bcloser%2Bstainless%2Bsteel%2Caps%2C117&sr=8-7&th=1 (last accessed on Sept. 17, 2025).

c.  Crown Tonka[6]



d.  American Panel[7]



80.    In addition to the above-identified door closers, the TTAB identified

competitor door closers with very similar to that of Kason's door closer in 1999. *See* Ex.

D at 7 (citing the door closer designs of competitors Standard-Keil Industries Inc. and Dent

Manufacturing Inc. as essentially the same as Kason's design using a rectangular shaped

---

[6] https://www.rhsparts.com/Item/07-559/Crown-Tonka/door-closer-body-only-cm (last accessed on Jan. 13, 2026).
[7] https://www.partstown.com/american-panel/ampl9c1310 (last accessed on Jan. 13, 2026).

housing and a roller arm). Below are representations of door closer designs of these competitors:

|  | |
|---|---|
| Keil Industries[8] | Dent Manufacturing[9] |

81.    True and correct copies of the webpages of the above examples are attached as **Exhibit I**.

82.    On information and belief, third-party door closers have been sold in competition with Kason's hydraulic door closers since at least 1999. On information and belief, such third-party products were and have been sold to the same class of consumers, through similar marketing and sales channels, and at comparable price points for many years.

83.    Third-party door closers bearing the combination of a rectangular housing and a curved arm (such as the above) continue to be sold in a robust secondary market.

84.    Kason has long been aware of third-party competitor door closers for refrigeration systems, incorporating the design of the combination of a rectangular housing

---

[8]    https://www.componenthardware.com/en/door-closer-spring-action-stl-polished-chrome   (last accessed on Jan. 13, 2026).

[9] http://www.dent-mfg.com/Products/d275.htm (last accessed on Jan. 13, 2026).

and a curved arm – and such closers have been widely available to consumers in the marketplace since at least 1999.

85.     On information and belief, Kason has not objected to or asserted trademark claims against the vast majority of third parties that have engaged in the sale and distribution of door closer product incorporating the combination of a rectangular housing and a curved arm—a design similar to that of Kason's hydraulic door closer.

## VI.   Plaintiffs' Sale of Functional Pneumatic Door Closers Prominently Displaying the GreenWize Mark is Not Likely to Cause Confusion.

86.     Kason has alleged that sale of the GreenWize Branded Door Closer infringes Kason's trademark rights in its 1094 Hydraulic Door Closer.

87.     The configuration and appearance of Kason's 1094 Hydraulic Door Closer is functional, generic and does not serve as an indicator of source.

88.     The GreenWize Branded Door Closer is sold to different customers than the customers that Kason's 1094 Hydraulic Door Closer are sold to.

89.     GreenWize prominently displays the "GreenWize" name on the GreenWize Branded Door Closer for the purpose of identifying the source of the product.

90.     Plaintiffs have experienced no instances in which any consumer or other party was confused, mistaken or deceived as to the affiliation, connection or association of Plaintiffs with Kason.

91.     Plaintiffs have experienced no instance in which a consumer or other party was confused, mistaken or deceived as to the origin, sponsorship or approval of Plaintiffs' pneumatic door closers.

92.     In the Georgia lawsuit discussed below, Kason has not identified any instance in which any consumer or other party was confused, mistaken or deceived as to the affiliation, connection or association of Plaintiffs with Kason.

93.     In the Georgie lawsuit discussed below, Kason has not identified any instance in which a consumer or other party was confused, mistaken or deceived as to the origin, sponsorship or approval of the GreenWize Branded Door Closers

94.     Consumers are not likely to be confused as to the indicator of source between Plaintiffs' pneumatic door closer and Kason's hydraulic door closers—especially where both products adopt and use the parties' respective identifying marks.

95.     Kason's use of its Kason mark on its hydraulic door closers, and Plaintiffs' use of "GreenWize" on the GreenWize Branded Door Closers eliminates any consumers confusion, as there is no confusion as to indicator of source when the source is identified on the respective products.

**VII.    Kason Cease-and-Desist Letter and Wrongful Lawsuit Against GreenWize.**

96.     On or about April 10, 2025, Kason, through counsel, issued a cease-and-desist letter directed to Plaintiff GreenWize which asserted purported trademark rights in the '100 Mark and the '887 Mark. A true and correct copy of the April 10, 2025 demand letter is provided as **Exhibit J** hereto (the "Kason Demand Letter"). The Kason Demand Letter required that GreenWize "cease and desist from all manufacturing, importation, marketing, ordering, purchasing, distribution, sales and installations" of the alleged infringing products. Ex. J at 5. Otherwise, Kason would "take legal action against [GreenWize]." *Id.* at 6-7.

97.     On May 5, 2025, before GreenWize and its counsel could even respond to the Kason Demand Letter, Defendant brought suit against GreenWize in the United States District Court for the Northern District of Georgia, alleging that GreenWize's "Offset Pneumatic Hook Mount Door Closer" product is identical in appearance to one of Kason's products and infringe the '100 Mark and the '886 Mark (the "Georgia Lawsuit"). The Georgia Lawsuit sought, inter alia, injunctive relief and treble damages for GreenWize's alleged trademark infringement, false designations of origin, and dilution of those two Registrations, in supposed violation of the Lanham Act and Georgia common law.

98.     GreenWize moved to dismiss the Georgia Lawsuit based on lack of personal jurisdiction.

99.     Notwithstanding the absence of personal jurisdiction over GreenWize in Georgia Lawsuit, Kason's oppressive tactics and strategies (including the possible attempted enforcement of Kason's marks) remain a real and imminent threat to not only GreenWize, but also Cornerstone.

100.     Based on the foregoing, a justiciable controversy exists between Plaintiffs and Kason as to whether Plaintiffs' conduct constitutes trademark infringement, false designation of origin, unfair competition, trademark dilution, unjust enrichment, and related claims pursuant to 15 U.S.C. §§ 1, et seq., including §§ 1114, 1125(a), and under the laws of the State of Georgia, and whether Kason owns valid trademark rights in the Marks.

101.     In view of Kason's threats and allegations, Plaintiffs need and are entitled to a judicial declaration that Plaintiffs' conduct does not infringe or dilute Kason's alleged

trademark rights in the '100 Mark and the '886 Mark or constitute unfair competition, or violate Georgia law, and that Kason owns no protectable trademark rights in the Marks. Absent a declaration to this effect, Kason will continue to wrongfully allege that Plaintiffs' door closers infringe Kason's alleged trademark rights, if any, thereby causing Plaintiffs irreparable injury and damage.

## COUNT I
### Cancellation of the Kason Trademarks Under 15 U.S.C. §§ 1119 and 1115(b)(8) for Utilitarian Functionality

102.    The allegations of paragraphs 1-101 are restated and incorporated by reference, as if fully set forth herein.

103.    As described herein, the '100 Registration and the '887 Registration (the "Kason Trademarks") depict design elements that are, and have been found to be, functional and/or disclaimed from the mark to overcome an objection based on functionality.

104.    There exists an independent basis to seek cancellation of the Kason Trademarks based on the functionality of the underlying design, including but not limited to the rectangular shape of the housing and the curved arm. The rectangular shape of the housing and curved arm are utilitarian features that are common design characteristics of door closers, including the refrigerator door closer industry.

105.    Accordingly, the Kason Trademarks are neither valid nor protectable because of their utilitarian functionality and so should be cancelled for that reason immediately.

106.    Pursuant to 15 U.S.C. §1119, the United States Patent and Trademark Office should be directed to rectify the Register, and to cancel the Kason Trademarks.

## COUNT II
### Cancellation of the Kason Trademarks Under 15 U.S.C. §§ 1115(b)(2), 1119 and 1127 for Genericness

107.    The allegations of paragraphs 1-106 are restated and incorporated by reference, as if fully set forth herein.

108.    The Kason Trademarks should be cancelled as generic as the product configurations are functional, are common configurations for door closers that have been and continue to be used by others, and do not serve to distinguish Kason's goods from the goods of others.

109.    Consumers (both historic and current) do not exclusively associate the combination of a rectangular housing and a curved arm in connection with Kason as source absent the presence of other indicators of source, such as the "KASON", "1094", "SureClose", or other Kason-related trademarks.

110.    At the time that Kason filed its applications to register the door closer configurations that are the subject of the Kason Trademarks, Kason was aware that its product configurations were functional, that third parties had adopted and used the subject configurations, and that the subject configurations were not capable of identifying Kason's products or of distinguishing Kason's products from the products of its competitors

111.    Given the nature of the marketplace, to the extent Kason can establish that present-day consumers associate the combination of elements with Kason, its rights are extremely narrow and limited to precisely the trademark as registered and no more. In other words, even if Kason could prove protectable rights and an exclusive association (it

29

cannot), its rights would not reach the use of a rectangular housing and curved arm for door closers generally.

112.    Under 15 U.S.C. § 1127, a mark can become generic due to the owner's omissions. As described above, the rectangular shaped housing is widely used across the refrigerator door industry and carries no significance as a mark.

113.    Accordingly, the Registrations for the Kason Trademarks are neither valid nor protectable because they have become generic and so should be cancelled for that reason immediately.

114.    Pursuant to 15 U.S.C. § 1119, the United States Patent and Trademark Office should be directed to rectify the Register, and to cancel the Kason Trademarks.

## COUNT III

### Declaratory Judgment of Non-Infringement Under 15 U.S.C. § 1114.

115.    The allegations of paragraphs 1-114 are restated and incorporated by reference, as if fully set forth herein.

116.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiffs have not infringed, are not infringing, and are not liable for infringing any of Kason's alleged rights, if any, as to the Kason Trademarks under Section 1114 of the Lanham Act.

117.    The Kason Trademarks are invalid for various reasons, as alleged above, including functionality, genericness and lack of distinctiveness.

118.    There is no likelihood of confusion arising out of sale of the GreenWize
Branded Door Closer because, *inter alia*, (1) the appearance of Kason's door closer product
is functional and does not serve as an indicator of source, (2) both GreenWize and Kason
prominently display their brand names on their respective products, and (3) the original
equipment manufacturer consumer base of Kason and the replacement consumer base of
Kason has limited overlap with the consumers of GreenWize.

119.    Plaintiffs are entitled to a declaratory judgment that Plaintiffs' products and
actions do not infringe and have not infringed, either directly or indirectly, the '100 and
'887 Marks or otherwise violated Section 1114 of the Lanham Act.

## COUNT IV

**Declaratory Judgment of No False Designation Under 15 U.S.C. § 1125(a).**

120.    The allegations of paragraphs 1-119 are restated and incorporated by
reference, as if fully set forth herein.

121.    Each and all of the Kason Trademarks are invalid for various reasons, as
alleged above.

122.    For the reasons stated above, Plaintiffs' advertising, manufacturing,
production, distribution, and all other uses of the GreenWize Branded Door Closer do not
violate any of Kason's supposed rights under federal law as to the Kason Trademarks.

123.    As a result of the acts described in the preceding paragraphs, there exists a
controversy of sufficient immediacy and reality to warrant the issuance of a declaratory
judgment that Plaintiffs have not and are not engaged in any false designation of origin or

otherwise infringing any of Kason's alleged rights, if any, as to the Kason Trademarks, under Section 1125(a) of the Lanham Act.

124.    Plaintiffs are entitled to a declaratory judgment that Plaintiffs have not engaged in any false designation of origin under Section 1125(a) of the Lanham Act.

<u>**COUNT V**</u>
**Declaratory Judgment of No Infringement, Unfair Competition or Unjust Enrichment under Common Law**

125.    The allegations of paragraphs 1-124 are restated and incorporated by reference, as if fully set forth herein.

126.    Each and all of the Kason Trademarks are invalid for various reasons, as alleged above.

127.    For the reasons stated above, Plaintiffs' advertising, manufacturing, production, distribution, and all other uses of the GreenWize Branded Door Closer do not violate any of Kason's supposed common law trademark rights of Kason, constitute unfair competition, or unjustly enrich Plaintiff.

128.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiffs have not infringed, are not infringing, and are not liable for infringing any common law trademarks of Kason.

129.    Plaintiffs are entitled to a declaratory judgment that Plaintiffs' products do not infringe and have not infringed, either directly or indirectly, any common law trademarks of Kason, or otherwise constitute unfair competition or unjust enrichment.

## COUNT VI
### Declaratory Judgment of No Trademark Dilution under 15 U.S.C. § 1125(c)

130.    The allegations of paragraphs 1-129 are restated and incorporated by reference, as if fully set forth herein.

131.    There exists an actual controversy on the issue of whether GreenWize use of the functional rectangular shape of the housing of a refrigerator door closer constitutes trademark dilution under 15 U.S.C. § 1125(c).

132.    As described above, the Kason Trademarks are invalid for various reasons.

133.    The Kason Trademarks are not famous as they do not signify to the general consuming public the source of the goods, as evidenced by the various third parties that use a substantially similar design.

134.    GreenWize's sale of the GreenWize Branded Door Closers has not and does not dilute or tarnish any rights Kason has in the Kason Trademarks.

135.    Plaintiffs are entitled to a declaratory judgment that Plaintiffs' products do not dilute or tarnish any or all of the Kason Trademarks.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

a.    A declaratory judgment that Plaintiffs' use and sale of the GreenWize-Branded Door Closers does not infringe any trademark or trade dress rights registered through the USPTO and owned by Kason;

b.    A declaratory judgment that Plaintiffs' use and sale of the GreenWize-Branded Door Closers does not constitute a false designation of origin;

c.    A declaratory judgment that Plaintiffs' use and sale of the GreenWize-Branded Door Closers does not infringe any common law trademark rights of Kason, or otherwise constitute unfair competition or unjust enrichment;

d.    A declaratory judgment that the Kason Trademarks include functional elements, including the rectangular shape of the housing and a curved arm, that are not protectable under the Lanham Act;

e.    A declaratory judgment that the Kason Trademarks are generic and are no longer protectable under the Lanham Act;

f.    Cancellation of the Kason Trademarks due to their functionality and/or genericness;

g.    A declaratory judgment that the Kason Trademarks are not famous and Plaintiffs' use of the rectangular shape for the housing and the curved arm in connection with pneumatic door closers does not dilute or tarnish each or any of the Kason Trademarks;

h.    As to all causes of action, reasonable costs and expenses, including attorneys' fees pursuant to 15 U.S.C. § 1117 or other applicable authority, prejudgment and postjudgment interest, and such further relief as the Court may deem just and proper.

Dated: January 13, 2026

Respectfully submitted,

*/s/ J. Derek Vandenburgh*
J. Derek Vandenburgh (#0224145)
CARLSON, CASPERS, VANDENBURGH &
LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Phone: (612) 436-9600
Facsimile: (612) 436-9605

*Attorney for Plaintiffs Supermarket Energy*
*Solutions, Inc. and Cornerstone Products Intl.*